May it please the Court, my name is Jason Hannan. I represent Defendants Escamilla-Rojas and Gonzalez-Valera. My intention is to reserve at least five minutes of rebuttal time for co-counsel this morning. A rebuttal time or shared? Shared time. Out of your 20 minutes? Yes, Your Honor. All right. Very well. Thank you, sir.  Yes. Thank you, Your Honor. In these cases, the magistrate judge violated Rule 11 because he addressed a large group of nearly 70 defendants at once in order to inform them of their rights. Did you make that objection to the magistrate? I did, Your Honor. And where did you do that and how did you do that? The objection to the general advisement of rights occurred at the transcript, page 135. Also, at the outset, I objected to, more generally, an en masse colloquy, which I think encompasses that objection as well. But specifically, I stated I object to the en masse address of rights at transcript, page 135. So that specific objection was made. Despite the plain language of Rule 11 and the text, the judge, however, went ahead and did this,  I objected to the general address of the defendant at a change of plea hearing, even though it requires that he personally address the defendant at a change of plea hearing. Excuse me, counsel. I'm looking at ER 135. Is it page 135 of the transcript? You know, wait until Judge O'Scanlan finishes talking. Absolutely. We'll understand what you're saying. All right. I think you're referring to page 135 of the transcript, which is probably 141 of the ER. Is that correct? That sounds correct, Your Honor. And I mean the transcript page, which is probably the top right page, 135. All right. Your Honor, as to due process in particular, the objection is that I requested an individual hearing for an individual defendant. I believe due process requires that. Very well. Thank you, counsel. Thank you, Your Honor. The defendant was never personally addressed by the judge at any point. What does personally mean? He was standing there, the judge was standing there. Right. Or sitting there. As established by this Court in Roblero Solis, personally means person to person. It means judge to defendant and defendant back to the judge. Well, that case seems to agree that there are cases where groups can be addressed en masse. Judge Noonan simply said you can't expand this indefinitely. In Roblero Solis, the only cases noted by the government involve just two or three co-defendants, Your Honor. What's the difference between two and three and 80? 80 is not personal, Your Honor. Why is two or three personal, then? Two or three, I would say, is not personal. However, because the rules But it is. As a matter of law, now it is. The rules were not rigid, the Court was stating. So two or three co-defendants, and I'm not here to argue that two or three co-defendants is a problem under Rule 11. I'm not. But if you're going to – but it established a principle. And even in the district court in Arizona, in the Tucson division, every felony guilty plea is done individually. There are exceptions, the same exceptions, with co-defendants that occur. And I've been at those changes of plea. That is the standard, and that is the meaning behind person to person. The Court, even in Fels and Hobson and Martinez-Martinez, if you look at those cases carefully, you'll see that they actually disapproved even of the two or three co-defendants that were advised simultaneously because of the problems that it caused. So as Judge Newton stated in Roblero Solis, any time you make an exception, it will become the rule. And that's the concern here. We have a standard by tradition that pleas are done as individuals. And the two or three co-defendants issue is another thing. But if the Court were to permit ten, it will become the rule, because there's no reason to go ahead and do an individual guilty plea. And then that would be the standard by tradition.    I was just going to say, this isn't rhetorical. What's the problem with their 10 so long as each of the 10 that is individually asked this happened in this case, the appropriate questions? And if that person has representation by a competent counsel, and the competent counsel is there at the time, what's the problem? Is this just an academic exercise? What's the real world problem? You defend these people. Right. What's the real world problem? The real world problem behind the plain language is that you cannot you're not getting the attention of the defendant. In these cases, for example, defendants fall asleep at Operation Streamline. They're not noticed. People are talking to other defendants, and they're not noticed. So what happens is if there are 10 of us in this room, we stop paying close attention. If you're addressing yourself to more and more people, it gets worse and worse and worse. But where are the lawyers in the middle of all this? And here's the other problem why, especially in this case, Your Honor, an individual plea was requested but denied, and it was an error, because I was required to represent four defendants at one time. I was not allowed to stand or sit next to them during the en masse hearing, the advisement of rights, as well as the stand-up or sit-down procedure. The courtroom was slightly larger than this one. I have a defendant over in the jury box over here. I have one in the gallery. I have another one here. And while I'm trying to pay attention to see what the court was going to do that day, I have no idea if they're following along, if they can hear. And they certainly can't turn to me and in private simply say, what was that, or any of the nonverbal communication that goes on. How many of them spoke English? None of them, Your Honor. So it's all done through an interpreter to boot. Correct, Your Honor. And there's no problem on the translation, I gather. I didn't raise any issue about the translation, Your Honor. Well, to distinguish this, and of course we'll hear from the government, but to distinguish this from what actually happened in Roblero-Solas, it seemed to me the magistrate in this case was quite conscious of that case and wanted to do this one right. And as I understand it, the magistrate individually questioned each defendant and got individual expressed waivers from each defendant. Actually, the magistrate called each defendant by name. That defendant appeared in front of the bench and was questioned by the magistrate. Now, that did not happen in Roblero. That's correct. So why isn't this acceptable? The Rule 11 has the inform part, the address part, which was en masse. And then it has the determination part, which I think is what the Court is referring to essentially. The Court brought them up as individuals and asked, did you understand all the rights? In the briefs, we argue that that determination portion was even inadequate. The determination part necessarily depends upon how those rights were addressed with the defendant. Additionally, this determination occurred two hours later. The judge simply asked one question, did you understand all the rights that I had explained to you earlier? That was the only way that the Court determined whether that person understood the rights. And where were you at the time? At that time, I was next to her. So the determination. And what did you say then? When did I? When the judge asked your client, did you understand all these rights? I was right next to her, and she says yes. And you did what? And then I objected and stated, this is not a knowing, intelligent, and voluntary plea, and I renewed my objections under the Sixth Amendment and due process and the Rule 11 at that time. The determination part, Your Honor, was still inadequate because it wasn't linked with the address of rights. In fact, we don't even know if she heard all of her rights. I'm not there to be her counsel next to her to determine whether she can hear. The judge never asked whether she heard each of her rights. And the only way in which he determined that was to ask all the defendants, please stand if you didn't hear your rights or if you didn't understand what I had to say. That's it. And that process itself is ambiguous for reasons that are laid out in the brief. So the even just the process of hearing, understanding, and the whole first half, the informed part of the address, which was not addressed in Roblero Solis. Roblero Solis only addressed itself to the determination part because that's the only part I objected to in that case. And you'll see that that's how the issue is framed. You didn't object to the failure of the magistrate to ensure that the plea was voluntary. So we're on a plain error review on that issue, correct? I objected, Your Honor, that the plea was not knowing, intelligent, and voluntarily, and I objected under due process on repeated occasions. But I thought that you stated on the record or co-counsel stated on the record that he was satisfied that their clients entered the pleas voluntarily. Am I wrong on that? Your Honor, there is a distinction between a couple of the cases. In Escamilla-Rojas and Mamejua v. Ixtecal, in those two cases, the government raised no issue as to the sufficiency of the objection. But in the two other cases, they do because of what happened at the end of the hearing where the judge asked us, well, do you want us to accept the pleas? Otherwise, the plea was voluntary. Even if the objection was preserved, what is the showing that your client would not have pleaded guilty if the magistrate had technically complied with 11b-2? Your Honor, under Rule 11, the – it is the government who has the burden because the objection was sufficient. They must show – they must make the showing the burden is on the government because we objected under Rule 11. But did you make a showing that had this particular provision been technically complied with, that your client would not have pled guilty? And, Your Honor, it's the government that is required to make a showing. No, I understand that. I understand your argument. But is there anything in the record with respect to your clients saying that he or she would not have pled guilty if the provision were complied with? Your Honor, the prejudice is that the record is inadequate to even show that she heard and understood each of her rights. And if we don't know that, we don't know what decision she would have made. So precedent to the question of what she would have done, we also need to know whether she entered it knowingly, intelligent, and voluntary. For example, did she really hear the privilege against self-incrimination? Did she understand that right? We don't know. And she may have decided, knowing that right, that she would have not pled guilty that day. Well, she was asked if she understood her rights, and she said yes. Now, we can't go behind that. We can, Your Honor, because of the circumstances of the case. That yes answer cannot be taken at face value. The state of her state of mind is not in the record. That question was asked two hours after the meeting. Is that in the record, by the way? Is there a good factual record to establish the proposition that you described earlier, that these people are scattered all over the place and that you had clients here, there, here, there, and then it was two hours later that these questions were asked? Is that factually in the record? It is, Your Honor. Is it? I specifically explained where my clients were and the problems I had under the Sixth Amendment. Where is that in the record? That one is at transcript page 156-157. And I apologize, that's not the ER. That's the transcript. Is it in the ER? It is in the ER as well, but I don't have that cite for you. Additionally, the Sixth Amendment objection was raised on numerous other cases. It sounds like ER 162, 163. I had one defendant that was in the jury box on the far right, one defendant was in the gallery. That sounds right, Your Honor. Thank you. Now, isn't there also evidence in the record that when it came time for the individual  nearby or accessible? Certainly. When the Court brought up the defendants for the determination part, which you conducted as an individual, I was there next to her. Okay. That was the only time I was near. The Sixth Amendment requires, based on the case law, that I'm entitled to be, sit and stand next to my own client during the entirety of a guilty plea proceeding. The informing of the rights portion of the hearing is crucial, just as crucial as the determination part. So on that basis, I also objected on Sixth Amendment grounds. And if I may at this time, I'd like to reserve the remaining time. You may do so. I have another question. Yes. Under options, under streamline, everybody who walks into the room has already been told by his or her lawyer that there's going to be no time attached to pleading guilty? We certainly haven't made that promise, but we tell them that that's the likely result, yes. For most of them. Well, how do you know it's the likely result? By their tradition. I mean, is that inherent in the streamline process? Has anybody in the streamline process ever been sent to prison? Yes, they have, Your Honor. How does that work? They then pull the judge will say I want to hear, especially on this case, and what I'm thinking about imposing something other than time served, and that happens. Does that affect any of the four defendants in this consolidated proceeding? It doesn't, Your Honor. See, that's a concern, because I think overlying this whole thing is sort of the sense of no harm, no foul, because everybody is going to be, you know, time served, get out of here. But if you've got a situation where you have 80 people in the room who are looking at 10 to 15 years in prison, then it starts to take on different overtones in terms of the sufficiency of the advice, the lawyer's participation, and the voluntariness of the waivers and all the rest. Because if we decide this case, for example, against you, it probably covers all cases. You could get 80 non-streamlined people in a room. And that's the frightening thing about it. That's what concerns me. There's no exception under Rule 11 for a misdemeanor or felony. It's based on term of imprisonment. So I would just point the court there. And in Arizona, with 50,000 felonies a day, apparently, or something like that, who knows? Unless there are more questions I'd like to reserve. Roberts. That's fine, counsel. Thank you. You may reserve the remainder of the time. I believe co-counsel has some argument now or not. You're reserving that for rebuttal? Very well. We'll hear from the government. May it please the Court. I'm Bob Miskell from the United States Attorney's Office in Tucson on behalf of the United States in these matters. The defendant's argument is basically premised entirely on the assumption that Rule 11 requires an individual colloquy in every case, and Rule 11 simply doesn't require that. As this Court has said in Lobero Solis, there can be circumstances where more than one person is involved in the plea colloquy. All that's required is that the communication with the judge be person-to-person. And you can communicate person-to-person to more than one person at one time. Now, you have to put that in context of what occurred in this case, and it actually occurs every day in Operation Streamline. The defendants meet with their attorneys in the morning. Presumably, at that point, the attorneys advise them of all their rights, et cetera. Then they're brought into court in the afternoon. In this case, at the start of the proceeding, the magistrate judge told the whole group of defendants to pay attention when I advise you of the rights, because I'm going to ask you about this later. So he's already keying them in that they need to be paying attention. The magistrate judge then does the group advisement of all the trial rights that they have, and then he calls them up in small groups and individually addresses each defendant and asks them, did you understand the rights? Do you want to waive those rights? Like two hours later? In some circumstances, it could be that far, yes. In this case, though, again, at that time, when the judge is asking them individually, they have their attorney beside them. There is no basis to question the defendant's answers when they say, I understood my rights, I want to waive my rights, I want to plead guilty. Presumably, if there was a problem, that would come up. And in fact, in this proceeding, and it's noted in the government's brief, one defendant, not one of the parties in this case, but one of the defendants in the proceeding, when he was up there individually, did say he didn't understand his rights. And at that point, the judge went over them again to make sure the defendant did understand. If the defendant says, I understand my rights, and there's nothing suggesting that there isn't an understanding, that is enough of a record to make sure that the plea is voluntary in intention and knowing. What is the mechanism during that two-hour period when the judge is advising them of their rights, if a defendant does not understand, what can she or he do? In this case, the magistrate judge instructed the defendants, if they didn't understand or if they didn't hear, to basically stand up or do something to draw attention to themselves so that the court could then address it at that point. Were they all seated? Yes. And so they are told in this big group to stand up if they don't understand. Correct. But again, in this case, the judge told them ahead of time, listen to what I'm saying because I'm going to ask you about it later. And he did specifically ask them, and they specifically answered. Now, there are a number of other cases where the defense counsel has made objections   to the defense counsel's plea. One of the things, Judge Trott asked whether this was an academic exercise or if it was a real world problem. I would suggest it is an academic exercise, and that's exemplified by, at least in two of the cases in this consolidated proof. After the defense counsel made all their objections, the magistrate judge specifically asked the defense counsel, do you want me to accept the plea? And the defense counsel said yes. If, in fact, there had been a real problem with that change of plea, the defense counsel's answer should have been no, the plea is involuntary, the plea is unknowing, whatever he wants to make. But the answer shouldn't be yes if, in fact, there is a problem with Rule 11 colloquially. And the government argues, at least especially in those two cases, because the defendants asked the court to accept the plea, the plain error analysis applies, and the dependent has the burden of showing that they wouldn't have pled guilty otherwise. Which two were those? That would have been Mr. Mendez and Mr. Gonzales and Mr. Valera. Counsel, you heard Mr. Hannan's argument that it's the burden on the government with respect to this issue. What's your response? If you look at the record as a whole, there is enough there for the court to conclude that the defendant would have pled guilty even if the proceeding had occurred in the way the defendant envisioned. Again, they're advised of their rights. They're told to pay attention. They agree. Well, first of all, do you agree with counsel that the burden is on the government? If plain error analysis doesn't apply and we're under harmless error analysis, that would be correct. Well, we know that two of these defendants did protect, that did preserve their rights. As I would argue as to the 11A questions, they arguably preserved their rights, not the 11B2 questions. All right. So none of the four preserved their rights with respect to the 11B2? Right. And that's the one about whether they were coerced basically into pleading guilty. The voluntary. Yes. And they were not specifically asked if they were coerced into pleading guilty. That is correct. But nobody, no defense counsel made that specific objection. Hey, you know, like, Judge, you forgot to ask this question. And the government's position is a specific question or a specific objection is necessary to preserve that error. Now, as far as the excuse me one second. Years ago, there was a judge in Santa Monica who used to haul a whole bunch of people into a room and his bailiff would bring on a tape recorder, put it on the desk, and the bailiff would tell everybody, listen. And then the judge would advise of the rights through the tape recorder, with nobody on the bench. Clearly, that's not going any too far. That didn't go very far, but never mind. I mean, if you read, looking at the transcript, you see a magistrate judge that is making a conscientious effort to comply with the defects that this court found in the streamlined proceeding that were enunciated in Olbrero Solis. And the defects that the court identified was basically there was nothing in the record so that you could affirmatively say whether the defendant understood their rights, whether they were, you know, pleading guilty voluntarily, all that stuff. In this case, the magistrate cured that defect by bringing them up individually and individually asking them one by one, do you understand your rights? Do you want to plead guilty? And the defendant's answer, yes. In that scenario, Rule 11 has been complied with. And if Rule 11 is complied with, the due process is complied with too. This reminds me a little bit of pre-Boykin. I was around pre-Boykin. They bring somebody in and they say, Joe Jones, is that your true name? Yeah. Are you represented by that lawyer standing there? Right. How do you plead guilty? Boom. Set it for sentencing. And the reason why we got into the whole Boykin mess and 11 and everything else is because the defendants would constantly come back in a parade in habeas or at sentencing saying my lawyer told me this, my lawyer didn't tell me that, I was promised this, I was promised that. And so really the system got tired of having to clean up all this stuff. And they said, just doggone it, just tell them what these rights are, make sure up front rather than clean up everything. I'm concerned here if we were to approve your procedure and people were not getting time served but serious sentences out of stuff like this, that then they're going to come back and attack the system. And then here we go with hearings and all that kind of business. And isn't it a better procedure just to make sure that these rights, which are very important rights, aren't confronted person to person individually at the outset? I mean, aren't you courting back-end disaster if we were to allow this to go on in all cases? I think the answer to that is you have to have some confidence in the judges and both the prosecutor and the defense attorneys. But they didn't in Boykin. I was there. I watched this whole thing. People had no confidence. And the appellate courts got mad. They had no confidence in the defense attorneys, the judges, the prosecutors or anybody. And they said, doggone it, just put it out there. We're tired of this. Obviously, we're in a different day and age now where attorneys are very cognizant of those issues and judges are very cognizant of those issues. In this case, again, this process, this whole procedure is set up to have all kinds of basically safety checks to make sure the dependents know what's going on. They meet with their attorneys ahead of time. They're advised by the judge. The judge then individually confirms that they understood what they were told. In that scenario, we have a good record that they understood what was going on, especially in the absence of any contemporaneous objection that they didn't understand. Do you give them a form that says here are all your rights in Spanish or whatever with an interpreter and have them sign it beforehand? Is there any check like that on all this problem? I do not believe the court does that. What the defense counsel do with them in the morning when they're meeting with them, I really don't know. So there are no written plea agreements in these cases as there are in many other cases? In the petty cases that are strictly petty offense cases, there are no written plea agreements. There are some cases that go through this procedure where the defendant is charged in a two-count complaint with both a felony and a misdemeanor, and in those cases there's a plea agreement that if they plead to the petty offense, the government will dismiss the felony and there will be a stipulated sentence of some sort. What did Judge Newton say when he indicated that you can't expand this number indefinitely? How many people you can deal with, for example? You couldn't have 1,000. I think that's probably true. At this point in Tuesday Why can't you expand it indefinitely? Because I think at some point the group gets so big that even the advisement group loses the person-to-person requirement. And that's, I think, their point here by describing what happened. I think that's exactly their point. At some juncture it gets so large you no longer have any confidence in the efficiency of the process. But in this case, again, we're dealing with, I think it was 67 this day. Generally, it's 70 is usually what the number is, that at that level, the court, by both advising as a group and watching the group as he's advising them and then bringing them up individually to confirm it, he satisfies, the magistrate judge satisfies himself that these are legitimate pleas and nobody is being railroaded through the system. The system is set up, like I said, with these checks to make sure that these are knowing and intelligent pleas and this is what the defendant wants. Now, I guess you also have to kind of factor into the equation, again, talking real-world stuff. The defendants actually are getting a benefit by this procedure, especially the ones that get time served, because if, in fact, you had the normal procedure where they come in for an initial appearance, because they're illegally in the United States, they would be detained pending any further proceedings. Did any of the 67 in this case get jail time other than time served? Some of the defendants that were, as I mentioned, charged in the two-pound complaints would have gotten jail sentences, yes. They did? Yes. Any of the four that are here? None. None of the four here. But that's a possibility. And they know that going in. Basically, on sentencing, typically, again, based on past practices with the magistrates, if somebody doesn't have any kind of record, they're going to get a sentence of time served. If they have some kind of record, even if they're not charged with the felony misdemeanor, they may get a sentence, depending on what their record background is, essentially. Most of these defendants, I understood that none of them spoke English. Am I right? That's correct. And most of them, from my own experience, had but a few years of school. Correct? Is that what you generally find? Probably correct, yes. And counsel said that he was not next to any of his clients. During the group advisement. Right. Isn't that sort of ignoring the real world, that these people well might not have understood that it went over their head, particularly with the translation, and yet by the time the two hours had passed, they simply thought, let's just get this over with? Isn't that something that happens in the real world? I think, again, maybe step back from the beginning again. And what I'm saying now isn't in the record, but I don't think defense counsel would dispute this. One of the checks we have is that during the morning session, if a defense counsel has concerns about his client's competence or ability to understand, specifically ability to understand the interpreter, those people are kind of screened out and Three defendants were dismissed at the beginning of the proceeding because they didn't they were having trouble understanding the interpreter. So that's another check that's kind of in this process. You know, they all, none of them speak English, but not only that, they come from a country and a culture where none of the rights that we're talking about even exist. You know, I grew up in Mexico. You don't have rights to trial by jury and all of these things. So in addition to whether they understand the words, the concepts are Greek to these people. And I hope that the defense attorneys explain them. But, you know, you tell somebody from Mexico you have a right to trial by jury, they don't know what that is. Not a clue. Actually, I would submit you would have that problem no matter how the proceeding was conducted with the judge, actually. Yeah, but if you've got, you know, if it's individually and you have a lawyer standing right there, there's a much better chance that the whole thing is going to sink in as to what these rights are. And especially when they've been told nothing's going to happen to you. You're not going to go to prison, you're just going to be sent back. So they're just, you know, floating through the game. They are advising the court that they understand their rights and they want to plead guilty. You want to sit down with some of them afterwards and say, tell me what right to confront witnesses is? You know, they're like, they're going to be like, what? They don't even know what confront means. Again, I would submit you would, if you, I mean, the scenario where you're doing it one person to one person, again, you would still have those problems. The judge would go through those split in the questions. The defendant would answer, yes, I understand all of them.  What does the record tell us about the defendant and counsel standing close to each other? My understanding from reading the record is that when each defendant was called up on a one-by-one basis, counsel was either at the side of that defendant or within one co-defendant's distance. Do I read that correctly? That is correct. And at one point the judge specifically commented on that. Let me see if I can find that real quick for you. Counsel, I'm sure we can find it in the record. Yeah. I mean, it is in there where the judge says I'm going to call you up in groups and your attorney will be next to you. The judge does say that at some point. And does the judge ask the attorney, counsel, have you talked with your client and are you satisfied your client understands these rights?  Is there a question like that? He asks the defense counsel at the beginning of the proceeding, have you had enough time to meet with your clients, do you need more time, something to that effect. Yes, he does ask that question. Time, yes, but doesn't say have you discussed the rights and are you satisfied your client understands his or her rights. Counsel, what concerns me is two hours later the defendant gets to stand next to her or his attorney. And is there any time that the attorney and the client can say was there, have a discussion, was there anything you didn't understand about what happened? Again, going back to the real world, in two of the defendants, and it's the two we discussed earlier, the Mendez and Gonzalez, the court specifically asks the defense counsel, do you need more time to discuss this with your client, to discuss the Again, it's an indication that it's not a problem. I don't see how you can assume that the defendant is essentially lying to the court when he says he understands his rights. Counsel, these all, these four cases involve petty offenses under 1325. Is this system used for serious offenses as well? No. Why not? Because the judges don't want to do it that way. Yeah, but why not? I mean, don't they sort of sense that when you're getting serious offenses you got in trouble? I'm not sure that that distinction is a good place to draw the line. Well, I'm not what I'm saying is that the, again, the magistrate judge in this instance has to determine what is the correct procedure to use or what is an acceptable procedure to use based on Rule 11. In this case, the magistrate concluded that this was acceptable, especially in light of this Court's decision in the Solis case. Yeah, but if it's good for the nickel-and-dime cases, it's good for the big cases, isn't it? I think you could make that argument, certainly. And, again, but you have to – I think, again, there's two different There's no reason not to have confidence that actors in the system will act responsibly. And that's what's going on here. And that's what would go on in other cases. I watched the avalanche of cases come in, resulting in Boykin and other cases, Tall and all the rest, where we said we're just tired of this. That's where Rule 11 and all the rest of this stuff came from. Clients come in afterwards and beefing the prosecutor, the judge, the lawyers, other lawyers, attacking lawyers as incompetent, having made promises and all this kind of stuff. And the system got tired of that. So they said, look, we're just going to close that door by doing it right the first time. And, again, I used to – not to get off on it. I used to say, you understand you have a right to trial by jury. Yes. That means that 12 people selected from the community with the help of your lawyer get to sit in that box. They'll hear all the evidence. They'll be told by the judge what the law is. And they will make the decision. I mean, you used to go into the stuff like that. Confront witnesses. You understand what that means? That means the witnesses are going to have to take the stance, where to tell the truth, in your presence. I mean, we used to go to that level of detail just to try to stop people later on from filing habeas and coming back and saying I didn't understand my right to trial by jury and all the rest. And maybe that's overdoing it. But that's what was done. I would suggest that that's more than Rule 11 requires. We got no kickbacks out of either of them. I mean, your whole idea is efficiency of the process. If the front end, you know, it's like Detroit that used to put cars out the door with 18 defects. Counsel, let me ask you this question. I think we're all very much aware that the number of these cases is enormous. And presumably the court in the District of Arizona has organized this process to try to deal with the volume. Suppose we required that each individual defendant had to be the subject of a separate hearing. In other words, no other co-defendants unless it were, let's say, a husband and wife or family or something like that. But every single one of these would have to be done on an individualized, and by that I mean separate proceeding with nobody else in the room other than the individual defendant. Number one, what happens to the other defendants? Are they still in jail this whole time waiting for their turn? Or are they released somehow? What happens to them? And secondly, is there any indication as to what this would mean in terms of simply the mechanics of working this out in the district? For the first question, if the defendants were not, did not have their change of plea on the same day they had their initial appearance, and again, this proceeding is basically a combined initial appearance, change of plea and sentencing. If those three things didn't happen on the same day, presumably all of these defendants would be kept in custody while the proceeding progressed because they do not have authority to be in the United States. So they'd actually spend a few more days in jail. As far as what would happen, my guess is you would probably need more magistrate judges in Tucson. Just if, again, obviously the more individualized it is, the more time it's going to take. And again, the government's position is that time isn't the issue really here. The issue is whether this procedure is acceptable under Rule 11 and protects the defendant's rights, and the government submits that it does. Roberts. Any further questions? If not, thank you, counsel. We'll hear from Mr. Huerta. Yes. Mr. Huerta, let me ask you as you're coming to the podium. If we were to require that these Rule 11 colloquies were to be on a basis in which there was no other defendant, other than a related codefendant, let's say, in the I assume you deal with these cases. How long would it take to process 67 petty offenses? Excuse me. I don't think that you need to have the courtroom be with no other defendants in there. That was never requested. Others can be there. I think the point of Rule 11 is that you speak person to person with the person that's pleading guilty so the court can make sure that they understand what's happening. Well, that was complied with at least when the individual was called up in front of the magistrate. So your concern is with the initial advisement? Is that the precise point? Yes, correct. And that's what Robles-Ruiz doesn't speak about, and that's what the judge in this case was, I would say, somewhat confused. So if you look at the record, the judge actually said, I'm going to tell you all these rights right now, and, you know, two hours later asked, did you understand them? What the government didn't tell you at that point in time is that the judge also told them, I'm going to go over these with you again. And none of them said, which goes to understanding what was going on, none of them said, hey, judge, you told me you were going to tell me my rights again when I got up here. And that never happened. The judge said, did you understand your rights? And if they say yes, why go over them again? Well, my point is the fact that, you know, we're talking about individuals and we're supposed to assume that they understood what they were told. If they understood what they were told, they expected, all of them, when they came up from wherever they were sitting in the courtroom, to be told their rights again, because that's what the judge asked. Well, that's a form over substance if they say I understand my rights. Well, and that might be the case, Your Honor, I guess, but the lawyer is standing right next to them. I mean, are you letting your clients plead guilty when you think they don't understand their rights and what they're doing? Your Honor, in these cases Is that what's happening? The public defenders are selling their clients down the river, strickling incompetent, pleading them guilty when they don't know what's going on? Your Honor, I think we try to make sure that we comply with what is required of us, and we try to do so in this case by having a separate hearing. I think Rule 11 is about making sure that the court makes sure that these individuals are understanding. As the court mentioned, these are part of the charges are that they're aliens, meaning they're not citizens of the U.S., meaning that you expect them not to know much about the schooling. And as Judge Campbell mentioned, a lot of these individuals don't have a lot of education. And as a matter of fact, in most changes of plea that have taken part outside of this type of proceeding, judges make sure they find out what kind of education the person has, whether there's anything at the moment that gets in the way of them being able to make an informed decision. And so I think those are questions that aren't asked in this, you know, small process because it would take too much time. To go back to your question, Judge Campbell, I would think it would take longer. There are and they would probably need more magistrate judges. I would also think that. Well, all right. We don't have magistrate judges. They're not apparently authorized, at least under the current congressional allocations. So put that aside. The bottom line is that your clients are sitting in jail for a longer period of time until they get their hearing, right? Your Honor, that might be the case. Additionally, Operation Stringing them out. And that doesn't bother you? Well, one, none of those cases have been appointed to me yet. But additionally, Operation Streamline is a process that was created between the government and the court. And when something happens, it can be canceled. There's a judge's conference in Phoenix, which is two hours away, and all the judges have to be at the conference. You know, we get notice that for that day there will be no Operation Streamline. So there's other ways of handling this. How about if it was done in just groups of three? Would that be okay in your idea of personally addressing them? Well, Your Honor, I still think that personal requires one-to-one with exceptions. So any group, any number of people more than one is out as far as your – that's your position? Right. And that's a case law. Limited exceptions. Even in co-defendant cases? The co-defendant's cases are the ones, Martinez-Martinez, Fels, and Hoffman. How is it okay in a co-defendant case and not in a group of the same size? Your Honor, I think partially it would be something like Martinez-Martinez versus a husband and wife, and maybe that would be some – another limited exception. So what? They both have individual rights. It's not community property rights. And I understand. I'm having a hard time seeing what the difference is between three co-defendants and three people similarly situated facing the same charges. Well, and I'm just telling the Court that based on the case law, I'm not going to argue that even the co-defendants – Forget the case law. I'm not interested in the case law. The case law says you can do three, so why can't you do three nonrelated? I just don't see the practical difference between groups of the same size. And, Your Honor, I think – and, Your Honor, I'm sorry that I can't really answer that. I think part of the way that it would – part of the way that it would try to differentiate it is maybe because they're on the same indictment or the same complaint compared to these individuals who would be on separate documents.  Each one is individually charged. So what? They're not there in the same – they have rights that are personal and individual and separate. I mean, I just can't find any principle distinction between ten co-defendants and ten people facing the same kind of charges. I'm talking about personally addressed. And, Your Honor, again, I think I'm going with the Rule 11 language, which speaks as to a defendant. And the exceptions have been made, so that's why my position is that it should only be person-to-person, one defendant to the court and vice versa. The advisement and the understanding of the defendant's rights by the court – the court understands that the defendant understood his or her rights. But the case law is what talks about more than one. Counsel, back to this particular proceeding with 67 defendants. What part of that process was acceptable under your view of Rule 11, and what part of that process was not? Your Honor, when – when I first made my objection and the court stated I will bring them down and I will speak to them personally or individually, I think that would be appropriate. I think the way the court did it was using a lot of boilerplate to get through the hearing. So I think the advisement of rights as a group was incorrect, but even the court getting the understanding from the individuals was improper because of the way that it was done. It was asked individually. Would you like to suggest a proper way to do it? Your Honor, and again, it's a individual one-to-one with limited exceptions created by case law under Rule 11. Would it take longer? Yes, but it would guarantee that the court knows that these individuals are really in – as was mentioned before. Counsel, you can be assured that all three of us are concerned about protecting the rights, especially the constitutional rights and certainly the Rule 11 rights, of all of these people. But there's also a huge, huge problem with the volume of these cases. So what would your advice be to this panel in terms of given the fact there are 67 people scheduled for that day, how would you revise the structure of that process, of that hearing? And, Your Honor, I – you know, I have never been a judge and I – actually, Judge Campbell would probably have a better answer than I would to that because she – in her position, she probably knows better how she's able to personally guarantee to herself and to the court that an individual is really pleading guilty because that person understands the rights and is willing to waive them and the attorney hasn't – Yeah, but you're here challenging the validity of this particular proceeding. And I'm asking you, how would you change it? And I don't think I'm hearing a response. Well, I guess my answer, Your Honor, would be that it be done person to person and that other individuals can be in the courtroom, so there's not a question of shuffling people back and forth. It would take longer, I understand that, but I think that would – that would not violate Rule 11. Okay. But there was person to person with respect to the stage when the defendant was put directly in front of the magistrate. That was person to person, was it not? The question as to whether or not he understood that the individual understood the rights was person to person. All right. So you're focused on the initial advisement by the magistrate to all 67 at once. That's your focus. That's mainly my focus, again, because if it had not been done in that way, it would be the advisement and then the determination would be more contemporaneous as previously mentioned. Could the magistrate have accommodated your concern by saying after she advised or he advised everybody, Mr. Mendez, do you understand? Mr. Gonzalez, do you understand? Mr. Menehua, do you understand? Would that have done it? Would that have worked? If it was contemporaneous with the – if it was contemporaneous with the advisement, is that? All right. Right after the magistrate advises the whole group of the rights, the very beginning. Okay. And I gather what the magistrate did was say if you don't understand, please stand. Is that what happened? That's correct. All right. And then instead of saying if you don't understand, please stand, suppose the magistrate went down the list of 67 and asked each one of them, did you understand? Did you understand? Would that take care of your problem? No, Your Honor. I think, again, because you still have this large group of 67 individuals all being told that together at the same time. That doesn't – that does not comply with Rule 11. It gives no – you can't really get to what – you know, to whether or not the person understands what they've just been told when you're going through 67 yeses. You know, you don't know the education of the person. You don't know exactly what's going on. There's nothing in Rule 11 that talks about the education of the person. And it does not. And my only – the only reason that I brought that up is in change of plea, judges as a norm ask what education they have, what substances they might be taking. Is that across the board in your experience? We're dealing with petty offenses here. We're not dealing with felonies. Does that make a difference? Actually, it's not so much the charge as – I had a petty offense case, a different type than this one, where I did a change of plea where the judge did ask all those things and whether or not the person was under the influence of anything, including drugs or alcohol, even though it was a minor offense. Do you routinely advise your clients what their rights are and go over all those rights with your clients before they wander into court to do something like this? Yeah. Your Honor, I attempt to explain it to them. The – what the government mentioned before as to some individuals whose Spanish is not so good who were dismissed originally. So we try to explain – I think most attorneys would try to explain all their rights to them. But do you run into a lot of clients like this who have Indian dialects as their primary language and not Spanish? Yes, Your Honor. Additionally, from time to time, I will have a client who I will bring to a translator and say, look, I don't think this person understands Spanish. And, you know, everyone's Spanish is different, too, my Spanish and other attorneys' Spanish. An interpreter will come back and say, well, no, his Spanish or her Spanish is good enough. And now you're in the – now you're in the middle. So it happens that some cases, like the ones at the beginning here, that were dismissed, their Spanish was so deficient because they spoke another language, I'm assuming, that the cases were dismissed. That's not always the case. It's not an attorney's decision that this individual cannot speak Spanish good enough. And so that's not something that's in the current process.   And what I'm saying is that there's a difference. In the invention of this streamlined process, its creation, were defense attorneys brought into the room to ask, what's your view of this? No. And not to my knowledge, Your Honor. Well, the government says yes. Not to your knowledge. It doesn't mean no. Right. And if attorneys were, I was not one of them. Counsel, let me follow up, if I might, about a question Judge O'Scanlan asked. Let's just assume you had the 67 people in the room, and the magistrate judge or the judge went through each right. For example, you would have the right to be represented by counsel. Counsel, you couldn't afford one, one would be advised. Do you understand that? And then said each of the 67 names, looking at and speaking directly to that person, would that be sufficient if there were a question after each right explained? And, Your Honor, the reason that I don't think that that is, that that would be, and maybe it would be for the first individual that's asked, because that person has just been asked whether they understand something they just heard. But by the time you're down the line and you're at the 67th defendant and you're asked, you know, did you understand what I just told you, I think that's too far afield. And I think that's part of the reason Rule 11 has this person-to-person rule, so that we don't have this problem. Because if not, you know, we can have 150 felony change to plea a day in Tucson done by one magistrate. And we don't need to hire any more magistrates for the District of Arizona. We'll just have one that does everything in the morning. Have everybody brought in for that. So I think that's the reason we have Rule 11. The reason some of these cases go under the radar, apparently, is obviously because you have clients who, based on experience from their attorneys, have been told, look, if you just go through this, you're getting out right now. And you look at the record, there's three or four attorneys that at the beginning are saying, we don't want Rule 11. Don't do an individual hearing. We just want to go right here. The whole group, we just want to get out of here. Or our clients just want to get out of here. So that's, I think, the reason that the court is supposed to watch out, to make sure that that doesn't happen. Thank you. Thank you, Counsel. Another question. Can I ask the government a question? Of course. Absolutely. This is an atmospheric. You were shaking your head. Yes, the defense world was asked about this. How did this whole screen line thing come about, and were the defense attorneys of the world consulted? Basically, it came about because Border Patrol was trying to figure out something that would actually work to try and control the border between Arizona and Mexico. At the time this was starting, Border Patrol was arresting about 450,000 to 500,000 people a year in what they call the Tucson sector, which is most of the border between Arizona and Mexico. They concluded that the procedure of just voluntarily returning people to Mexico wasn't working, so they wanted to try something new. The Operation Streamline is actually part of a much bigger strategy that has other components where consequences are given to defendants, like more use of the formal deportation proceedings, more use of expedited removal proceedings. They have a program where they fly people from the southern part of Mexico into Mexico City so that they can't basically come back across real easily. So there are all different kinds of programs going on. When this started, there were numerous meetings between the magistrate judges, Border Patrol, the marshals, prosecutors, and defense counsel about how to set this up in a workable way while protecting everybody's rights. And you say defense counsel. Was the Federal Defender involved in that? Yes, there was somebody from the Federal Defender's Office and also somebody from the panel, the CJA panel there. And they discussed, there were extensive discussions about how many clients per attorney, how many attorneys would be needed. All those kinds of questions were discussed. There were discussions on the appropriate, for the CJA attorneys, the appropriate payment considerations. At the time Tucson started its program, a similar program had been going on in Texas for quite some while, which actually was set up quite differently. Because of these, all these meetings, I would say different, there are different safeguards in place in Tucson than there were in Texas, actually. In Texas, they had one attorney representing a multitude of people. Here it's, in Tucson, it's limited to, I think, five or six is the general rule, basically. So all those procedures were kind of discussed. And I'm not suggesting that the defense counsel necessarily all agreed with it, but they did discuss it. Okay. Thank you very much. Thanks. The case just argued will be submitted for decision.
judges: Campbell, O'scannlain, Trott